UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| BONLYDIA JONES-WALTON, | ) | CASE NO. 6:15-CV-995-0rl-22TBS |
| | ) | |
| FREDERICK HARRIS, | ) | |
| | ) | JUDGE |
| JOHN HARRIS, | ) | |
| | ) | |
| PAUL HARRIS, SR., | ) | |
| | ) | **COMPLAINT** |
| A.H., a minor, | ) | |
| | ) | |
| PAUL HARRIS, JR., | ) | |
| | ) | |
| RICHARD HARRIS, | ) | |
| | ) | |
| LISA LESTER, | ) | |
| | ) | |
| R.H., a minor, | ) | |
| | ) | |
| LAMAR SIMMONS, | ) | |
| | ) | |
| DEREK MCNEAL, | ) | |
| | ) | |
| J.H., a minor, | ) | |
| | ) | |
| BONIRIS MCNEAL, | ) | |
| | ) | |
| CHRISTINA HARRIS, | ) | |
| | ) | |
| S.M., a minor, | ) | |
| | ) | |
| RICHARD HARRIS, | ) | |
| | ) | |
| S.M., a minor, | ) | |
| | ) | |
| TRACIE AUSTIN, | ) | |
| | ) | |
| OCATIVA HARRIS, | ) | |
| | ) | |
| JESSICA AUSTIN, | ) | |

DANITICA SIMMONS,  )
                   )
JAMES AUSTIN,      )
                   )
DENISE AUSTIN,     )
                   )
BRANDON SCOTT,     )
                   )
RICHARD HARRIS,    )
                   )
ERIKA BELL-SCOTT,  )
                   )
ZELMA MILLER-JOHNSON,  )
                   )
MARK COOKE,        )
                   )
T.H., a minor,     )
                   )
M.H., a minor,     )
                   )
K.H., a minor,     )
                   )
B.H., a minor,     )
                   )
DANIEL HARRIS,     )
                   )
MARY HALL,         )
                   )
DIONNE HARRINGTON, )
                   )
D.E., a minor,     )
                   )
D.S., a minor,     )
                   )
D.S., a minor,     )
                   )
L.S., a minor,     )
                   )
J.H., a minor,     )
                   )
DARREN HARRIS,     )
                   )
MARETTA HARRIS,    )

DANIELLE HARRIS,                              )
                                             )
DENISE STRICKLAND,                           )
                                             )
DARRYL STRICKLAND,                           )
                                             )
D.S., a minor,                               )
                                             )
DENEEN STRICKLAND,                           )
                                             )
DENE STRICKLAND,                             )
                                             )
DAVID HARRIS,                                )
                                             )
JOSHUA HARRIS,                               )
                                             )
MATTHEW HARRIS,                              )
                                             )
MALCOLM HARRIS,                              )
                                             )
AMBER HARRIS,                                )
                                             )
JAVON JORDON,                                )
                                             )
ESTHER AUSTIN-HALL,                          )
                                             )
LENORE AUSTIN-FULFORD,                       )
                                             )
THOMAS FULFORD,                              )
                                             )
JOHN JORDAN,                                 )
                                             )
EDDIE PARKER,                                )
                                             )
      Plaintiffs,                          )
                                             )
           v.                            )
                                             )
VILLAS AT LAKE EVE                           )
CONDOMINIUM ASSOCIATION, INC.,               )
                                             )
LAKE EVE RESORT CONDOMINIUM                  )
OWNERS ASSOCIATION, INC.,                    )

3

LE ORLANDO OWNER, LLC,                    )
                                          )
LE ORLANDO PARTNERS, LLC,                 )
                                          )
THE ARDEN GROUP INC.,                     )
                                          )
ARDEN REAL ESTATE PARTNERS I,             )
LP,                                       )
                                          )
EIGHTFOLD REAL ESTATE CAPITAL,            )
L.P.,                                     )
                                          )
EIGHTFOLD LE ORLANDO INVESTOR,            )
LLC,                                      )
                                          )
HOSTMARK HOSPITALITY GROUP,               )
INC.,                                     )
                                          )
BLUEGREEN CORPORATION,                    )
                                          )
KA AND KM DEVELOPMENT INC.,               )
                                          )
VK AND MK DEVELOPMENT INC.,               )
                                          )
EVE MANAGEMENT INC.,                      )
                                          )
LAKE EVE RESORT MANAGEMENT,               )
LLC,                                      )
                                          )
LISA CATENA,                              )
                                          )
VINOD KALIDAS,                            )
                                          )
NIRMAKSEE KALIDAS,                        )
                                          )
ARTI KALIDAS,                             )
                                          )
ORANGE COUNTY SHERIFF'S OFFICE,           )
                                          )
JERRY L. DEMINGS,                         )
                                          )
TROY PEARSON,                             )
                                          )

LAURA REEVES,                          )
                                       )
JACQUELINE HAMON,                      )
                                       )
JULIE KISSANE,                         )
                                       )
ROBERT LARSON,                         )
                                       )
TERRANCE MARTINEC,                     )
                                       )
DARRYL MARK HOPPER,                    )
                                       )
SHARON KOSMIDIS,                       )
                                       )
THOMAS LIN,                            )
                                       )
PAUL HOLLINGSWORTH,                    )
                                       )
BRENT BAGSHAW,                         )
                                       )
KIMBERLY SMITH,                        )
                                       )
TODD BUTLER,                           )
                                       )
JOHN DOES 1-10,                        )
                                       )
        Defendants.                    )

Now come above-named Plaintiffs, by and through counsel, and for their Complaint against the above-named Defendants state and aver the following.

## PRELIMINARY STATEMENT

1.    This is a civil-rights action in which Plaintiffs seek relief for violations of their right to equal protection, regardless of race, as secured and guaranteed by Title 42, Sections 1981, 1983, and 1985 of the United States Code, the Fourteenth Amendment to the United States Constitution, and the laws of the State of Florida.

2.    The claims asserted in this Complaint arise from Plaintiffs' eviction from the Lake Eve Resort in Orlando, Florida, on Wednesday, June 22, 2011.

3.    That day began Plaintiffs' 32nd annual family reunion, and that week was supposed to be a joyous occasion for them.

4.    Most members of this African-American family had checked in to the Lake Eve Resort the night before (June 21) after traveling 18 hours on a bus they chartered from Ohio. They had reservations at the resort, and they checked in without incident.

5.    The following day (June 22), the family members were relaxing around the resort— some in their rooms, some at the pool.  Unbeknownst to them, the resort's management and employees, at the behest of the resort's owners and with the agreement and cooperation of the Orange County Sheriff's Office, intended to systematically evict the entire family.

6.    They went room by room, knocking on doors, ordering Plaintiffs to pack their belongings and get out.  They stopped anyone in the hallways who looked African-American and asked whether they were part of Plaintiffs' group.

7.    As for the family members who had not yet arrived to check in, the resort cancelled their reservations.

8.    Plaintiffs asked why they were being evicted.  The resort and the sheriff's deputies refused to give a reason.

9.    Nevertheless, Plaintiffs, in a peaceful, respectful, and cooperative manner, obeyed the resort's and the deputies' orders to vacate their rooms and leave the resort.

10.    Plaintiffs were brought down to the lobby.

11. They spent the next four hours scrambling to find somewhere else to stay. Babies were crying. Young children were hungry and restless. Elderly and pregnant women were exhausted. Meanwhile, a crowd of guests had gathered, wondering why this African-American family had been evicted from the resort and was now surrounded by a posse of sheriff's deputies.

12. The reason why—as uncovered during an investigation conducted by the Florida Commission on Human Relations (the state agency charged with enforcing the Florida civil rights laws)—was race.

13. Indeed on November 7, 2014, after a three-year-long administrative process, the Commission on Human Relations issued a final order adopting the findings and conclusions of law of an administrative law judge, who determined that Plaintiffs were evicted from the resort on the basis of their race.

14. Because of Defendants' discriminatory acts, Plaintiffs were denied the right to make and enforce a contract, denied equal treatment in a place of public accommodation, and unlawfully detained by law enforcement officers.

15. What is more, Defendants, with the intent to cause harm to Plaintiffs' reputation, made false reports against Plaintiffs to justify their illegal action.

16. Plaintiffs now seek declaratory relief and money damages—both compensatory and punitive—against Defendants, jointly and severally, as well as an award of costs and reasonable attorneys' fees, and such other relief as the Court deems appropriate.

17. Supreme Court Justice William Douglas wrote in *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 447 (1968): "Today the black is protected by a host of civil rights laws. But

7

the forces of discrimination are still strong." This lawsuit aims to use the civil rights laws to weaken the forces of discrimination, which persist to this day, and to ensure that the guarantee of equal treatment embodied in federal and state anti-discrimination laws does not become an empty promise for individuals of color.

## JURISDICTION AND VENUE

18.   This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, because some of the claims asserted in this Complaint arise under the Constitution and laws of the United States, namely the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1981, 1983, and 1985.

19.   This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

20.   Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

21.   The events giving rise to the claims asserted in this Complaint arose at the Lake Eve Resort, 12388 International Drive, Orlando, Florida, 32821. Venue therefore lies in this Court pursuant to 28 U.S.C. § 1391(b)(2).

22.   Likewise the Orlando Division of the United States District Court for the Middle District of Florida is the appropriate division in which to institute this civil proceeding pursuant to Local Rule 1.02(c).

## PARTIES

23.   Plaintiff BonLydia Jones-Walton, age 50, is a female resident of the State of Ohio. Plaintiff BonLydia Jones-Walton is African-American.

24.   Plaintiff Frederick Harris, age 56, is a male resident of the State of Ohio.  Plaintiff Frederick Harris is African-American.

25.   Plaintiff John Harris, age 48, is a male resident of the State of Ohio.  Plaintiff John Harris is African-American.

26.   Plaintiff Paul Harris, Sr., age 53, is a male resident of the State of Ohio.  Plaintiff Paul Harris, Sr. is African-American.

27.   Plaintiff A.H., a minor child, is a female resident of the State of Ohio.  Plaintiff A.H. is African-American.

28.   Plaintiff Paul Harris, Jr., age 19, is a male resident of the State of Ohio.  Plaintiff Paul Harris, Jr. is African-American.

29.   Plaintiff Richard Harris, III, age 33, is a male resident of the State of Ohio.  Plaintiff Richard Harris, III, is African-American.

30.   Plaintiff Lisa Lester, age 45, is a female resident of the State of Ohio.  Plaintiff Lisa Lester is African-American.

31.   Plaintiff R.H., a minor child, is a female resident of the State of Ohio.  Plaintiff R.H. is African-American.

32.   Plaintiff Lamar Simmons, age 39, is a male resident of the State of Ohio.  Plaintiff Lamar Simmons is African-American.

33.   Plaintiff Derek McNeal, age 46, is a male resident of the State of Ohio.  Plaintiff Derek McNeal is African-American.

34.   Plaintiff J.H., a minor child, is a female resident of the State of Ohio.  Plaintiff J.H. is African-American.

35.    Plaintiff BonIris McNeal, age 41, is a female resident of the State of Ohio.  Plaintiff BonIris McNeal is African-American.

36.    Plaintiff Christina Harris, age 23, is a female resident of the State of Ohio.  Plaintiff Christina Harris is African-American.

37.    Plaintiff S.M, a minor child, is a female resident of the State of Ohio.  Plaintiff S.M. is African-American.

38.    Plaintiff Richard Harris, Jr., age 58, is a male resident of the State of Ohio.  Plaintiff Richard Harris, Jr., is African-American.

39.    Plaintiff S.M., a minor child, is a female resident of the State of Ohio.  Plaintiff S.M. is African-American.

40.    Plaintiff Tracie Austin, age 22, is a female resident of the State of Ohio.  Plaintiff Tracie Austin is African-American.

41.    Plaintiff Octavia Harris, age 34, is a female resident of the State of Ohio.  Plaintiff Octavia Harris is African-American.

42.    Plaintiff Jessica Austin, age 23, is a female resident of the State of Ohio.  Plaintiff Jessica Austin is African-American.

43.    Plaintiff Danitica Simmons, age 36, is a female resident of the State of Ohio.  Plaintiff Danitica Simmons is African-American.

44.    Plaintiff James Austin, age 53, is a male resident of the State of Ohio.  Plaintiff James Austin is African-American.

45.    Plaintiff Denise Austin, age 49, is a female resident of the State of Ohio.  Plaintiff Denise Austin is African-American.

46. Plaintiff Brandon Scott, age 31, is a male resident of the State of Ohio. Plaintiff Brandon Scott is African-American.

47. Plaintiff Richard Harris, IV, age 24, is a male resident of the State of Ohio. Plaintiff Richard Harris, IV, is African-American.

48. Plaintiff Erika Bell-Scott, age 30, is a female resident of the State of Ohio. Plaintiff Erika Bell-Scott is African-American.

49. Plaintiff Zelma Miller-Johnson, age 61, is a female resident of the State of Ohio. Plaintiff Zelma Miller-Johnson is African-American.

50. Plaintiff Mark Cooke, age 23, is a male resident of the State of Ohio. Plaintiff Mark Cooke is African-American.

51. Plaintiff T.H., a minor child, is a female resident of the State of Ohio. Plaintiff T.H. is African-American.

52. Plaintiff M.H., a minor child, is a female resident of the State of Ohio. Plaintiff M.H. is African-American.

53. Plaintiff K.H., a minor child, is a male resident of the State of Ohio. Plaintiff K.H. is African-American.

54. Plaintiff B.H., a minor child, is a female resident of the State of Ohio. Plaintiff B.H is African-American.

55. Plaintiff Daniel Harris, age 20, is a male resident of the State of Ohio. Plaintiff Daniel Harris is African-American.

56. Plaintiff Mary Harris, age 65, is a female resident of the State of Ohio. Plaintiff Mary Harris is African-American.

57.  Plaintiff Dionne Harrington, age 48, is a female resident of the State of Ohio. Plaintiff Dionne Harrington is African-American.

58.  Plaintiff D.E., a minor child, is a female resident of the State of Ohio. Plaintiff D.E. is African-American.

59.  Plaintiff D.S., a minor child, is a female resident of the State of Ohio. Plaintiff D.S. is African-American.

60.  Plaintiff D.S., a minor child, is a female resident of the State of Ohio. Plaintiff D.S. is African-American.

61.  Plaintiff L.S., a minor child, is a male resident of the State of Ohio. Plaintiff L.S. is African-American.

62.  Plaintiff J.H., a minor child, is a female resident of the State of Ohio. Plaintiff J.H. is African-American.

63.  Plaintiff Darren Harris, age 28, is a male resident of the State of Kentucky. Plaintiff Darren Harris is African-American.

64.  Plaintiff Maretta Harris, age 27, is a female resident of the State of Ohio. Plaintiff Maretta Harris is African-American.

65.  Plaintiff Danielle Harris, age 20, is a female resident of the State of Ohio. Plaintiff Danielle Harris is African-American.

66.  Plaintiff Denise Strickland, age 50, is a female resident of the State of Missouri. Plaintiff Denise Strickland is African-American.

67.  Plaintiff Darryl Strickland, age 52, is a male resident of the State of Missouri. Plaintiff Darryl Strickland is African-American.

68.   Plaintiff D.S., a minor child, is a male resident of the State of Missouri. Plaintiff D.S. is African-American.

69.   Plaintiff Deneen Strickland, age 22, is a female resident of the State of Missouri. Plaintiff Deneen Strickland is African-American.

70.   Plaintiff Dene Strickland, age 20, is a female resident of the State of Missouri. Plaintiff Dene Strickland is African-American.

71.   Plaintiff David Harris, age 25, is a male resident of the State of Ohio. Plaintiff David Harris is African-American.

72.   Plaintiff Joshua Harris, age 21, is a male resident of the State of Ohio. Plaintiff Joshua Harris is African-American.

73.   Plaintiff Matthew Harris, age 19, is a male resident of the State of Ohio. Plaintiff Matthew Harris is African-American.

74.   Plaintiff Malcolm Harris, age 20, is a male resident of the State of Ohio. Plaintiff Malcolm Harris is African-American.

75.   Plaintiff Amber Harris, age 19, is a female resident of the State of Ohio. Plaintiff Amber Harris is African-American.

76.   Plaintiff Javon Jordan, age 23, is a male resident of the State of North Carolina. Plaintiff Javon Jordan is African-American.

77.   Plaintiff Esther Austin-Hall, age 69, is a female resident of the State of Ohio. Plaintiff Esther Austin-Hall is African-American.

78.   Plaintiff Lenore Austin-Fulford, age 32, is a female resident of the State of Ohio. Plaintiff Lenore Austin-Fulford is African-American.

79. Plaintiff Thomas Fulford, age 37, is a male resident of the State of Ohio. Plaintiff Thomas Fulford is African-American.

80. Plaintiff John Jordan, age 25, is a male resident of the State of North Carolina. Plaintiff John Jordan is African-American.

81. Plaintiff Eddie Parker, age 19, is a male resident of the State of Ohio. Plaintiff Eddie Parker is African-American.

82. Plaintiffs are all members of a large extended family and are all upstanding members of their communities.

83. On information and belief, Defendant Lisa Catena, was at all relevant times an employee of the Lake Eve Resort and acting within the scope of her employment. On information and belief, Catena participated in, agreed with, and helped execute the decision to have Plaintiffs evicted from the Lake Eve Resort.

84. At all relevant times, the Lake Eve Resort extended to the public its accommodations and invited all persons desiring its accommodations.

85. On information and belief, other employees of the Lake Eve Resort, who were acting within the scope of their employment, participated in, agreed with, and helped execute the decision to have Plaintiffs evicted from the Lake Eve Resort.

86. Defendant Vinod Kalidas, Defendant Nirmaksee Kalidas, and Defendant Arti Kalidas were at the time of the eviction the owners, officers, and directors of the Lake Eve Resort and agreed with, approved, and authorized the eviction.

87. On information and belief, the Lake Eve Resort was at the time of the eviction owned by Defendant KA and KM Development, Inc., a Florida for-profit corporation with

headquarters in Orlando, and Defendant VK and MK Development, Inc., a Florida for-profit corporation with headquarters in Orlando. The Lake Eve Resort represented substantially all of these two owners' assets.

88.     On information and belief KA and KM Development, Inc., was at the time of the eviction owned by Vinod Kalidas, Nirmaksee Kalidas, and Arti Kalidas, who were also its president, treasurer, and secretary, respectively.

89.     On information and belief VK and MK Development, Inc., was at the time of the eviction and continues to be owned by Vinod Kalidas, Nirmaksee Kalidas, and Arti Kalidas, who are also its president, treasurer, and secretary, respectively.

90.     On information and belief, Lake Eve Resort is and was at all times relevant managed by one or all of following: Defendant Eve Management, Inc., a for-profit corporation incorporated in Florida with headquarters in Orlando, whose president was Vinod Kalidas and secretary Arti Kalidas; Defendant Lake Eve Resort Management, LLC, a Florida limited liability company, whose managers/members were Randy Steinbeck, a resident of Florida, and John Gordon, also a resident of Florida; Defendant Villas at Lake Eve Condominium Association, Inc., a Florida non-profit corporation with headquarters in Orlando; and Defendant Lake Eve Resort Condominium Owners Association, Inc., a Florida non-profit corporation with headquarters in Orlando.

91.     On information and belief, the Lake Eve Resort was sold in 2012 to the following entities: Defendant LE Orlando Owner, LLC, a Delaware limited liability company; Defendant LE Orlando Partners, LLC, a Florida limited liability company; Defendant The Arden Group, Inc., a Pennsylvania for-profit corporation; Defendant Arden Real

Estate Partners I, L.P., a Delaware limited partnership; Defendant Eightfold Real Estate Capital, L.P., a Delaware limited partnership; Defendant Eightfold LE Orlando Investor, LLC, a Florida limited liability company; and Defendant Hostmark Hospitality Group, Inc., an Illinois for-profit corporation. As a result of the purchase, the Lake Eve Resort became substantially all of these owners' assets.

92.    On information and belief, the foregoing purchasers substantially continued the business operations of the Lake Eve Resort, including using the same facilities, personnel (including supervisors), physical location, working conditions, equipment, and furniture as the predecessor owners did. Said purchasers expressly or impliedly assumed all obligations of the predecessors.

93.    On information and belief, the sale of the Lake Eve Resort in 2012 was a fraudulent transfer under Florida's Fraudulent Transfer Act because, among other things, the sellers intended to hinder Plaintiffs' recovery of a judgment against them for the unlawful eviction that was the subject of the administrative complaint, which was pending at the time of the sale, and is the subject of this lawsuit.

94.    On information and belief, the Lake Eve Resort was sold in 2013 to Defendant Bluegreen Corporation, a Florida for-profit corporation.

95.    On information and belief, the Bluegreen Corporation substantially continued the business operations of the Lake Eve Resort, including using the same facilities, personnel (including supervisors), physical location, working conditions, equipment, and furniture as the predecessor owners did. Bluegreen Corporation expressly or impliedly assumed all obligations of the predecessors.

96.     On information and belief, the sale of the Lake Eve Resort in 2013 was a fraudulent transfer under Florida's Fraudulent Transfer Act because, among other things, the sellers intended to hinder Plaintiffs' recovery of a judgment against them for the unlawful eviction that was the subject of the administrative complaint, which was pending at the time of the sale, and is the subject of this lawsuit.

97.     The Lake Eve Resort has been known by various names, including Building #1 and Lake Eve at the Fountain but will be referred to throughout this Complaint as the Lake Eve Resort.

98.     The foregoing defendants will be collectively referred to in this Complaint as the "Lake Eve Defendants."

99.     At all relevant times, the Lake Eve Defendants were acting by and through their officers, agents, and employees, all of whom were acting within their scope of employment. The Lake Eve Defendants are therefore liable for the unlawful acts of said officers, agents, and employees, as alleged herein, under the doctrine of respondeat superior.

100.    Defendant Orange County Sheriff's Office is a duly organized Constitutional Office under Florida law and duly authorized law enforcement agency, with the ability to sue and be sued, residing in Orange County in the Middle District of Florida.

101.    Defendant Jerry L. Demings was at all relevant times (and continues to be) the elected and duly appointed Orange County Sheriff. The counts in this Complaint are against Demings in his official capacity. Any claims against the Sheriff in his official capacity are duplicative of claims against the Orange County Sheriff's Office.

102. Defendants Troy Pearson, Laura Reeves, Jacqueline Hamon, Julie Kissane, Robert Larson, Terrance Martinec, Darryl Mark Hopper, Sharon Kosmidis, Thomas Lin, Paul Hollingsworth, Brent Bagshaw, Kimberly Smith, and Todd Butler were at all relevant times Orange County Sheriff's Office deputies acting within their scope and authority under color of Florida law. Said Defendants participated in, agreed with, and helped execute the plan to evict Plaintiffs from the Lake Eve Resort.

103. Additional individuals, whose true names Plaintiffs are unaware of and are therefore being sued under the fictitious names John Does, were at all relevant times Orange County Sheriff's Office deputies acting within their scope and authority under color of Florida law and participated in, agreed with, and helped execute the plan to have Plaintiffs evicted from the Lake Eve Resort. Plaintiffs will seek leave to amend this Compliant to allege the true names, capacities, and circumstances supporting the liability of said Defendants at such time as Plaintiffs learn their names.

104. The Orange County Sheriff's Office deputies referenced above will be collectively referred to in this Complaint as the "Sheriff's Deputies."

## FACTS

105. Plaintiffs, African-Americans, are all members of a large extended family.

106. Plaintiffs convene annually for a weeklong family reunion.

107. Plaintiffs agreed to hold their 32nd annual family reunion in 2011 in Orlando, Florida.

108. After much research and planning, Plaintiffs decided upon the Lake Eve Resort.

109.  The Lake Eve Resort is a high-end resort with nearly 200 rooms and is conveniently located near major attractions in Orlando, including Walt Disney World, Universal Studios, and SeaWorld.

110.  Plaintiffs contacted the Lake Eve Resort and made advance reservations for the entire family.

111.  Prior to June 21, 2011, Plaintiffs had a valid and enforceable contract to stay at the Lake Eve Resort for several nights.

112.  Because Plaintiffs do not reside in Orlando, Florida, they had to arrange for long-distance transportation.

113.  A few traveled by air.

114.  But most—well over fifty of them—chartered a private bus to take them from the Cleveland, Ohio, area, which is more than a thousand miles from Orlando.

115.  The bus departed from Ohio on the morning of June 21, 2011, and arrived at the Lake Eve Resort 18 hours later—well into the evening.

116.  By the time they arrived, Plaintiffs were tired and exhausted.

117.  They checked in and paid for their rooms pursuant to their reservations.

118.  Plaintiffs went to their rooms and settled in, expecting to stay several days.

119.  Many went straight to bed.

120.  The next morning began quietly and peacefully for Plaintiffs.

121.  Many of them were relaxing in their rooms; others were lounging poolside.

122.  At no time did Plaintiffs create a disturbance.

123.  At no time were they rowdy or unruly.

124. At all times Plaintiffs were peaceful, calm, and respectful of everyone at the Lake Eve Resort.

125. Meanwhile, and unbeknownst to Plaintiffs, the Lake Eve Resort was planning to evict them all.

126. The decision to evict the entire family was discussed and agreed to by the resort's employees (including the on-duty managers), owners, directors, and officers.

127. The plan was to evict every single one of the family members that had checked in— small children, elderly women, and pregnant mothers included—and to cancel the reservations of those family members who had yet to arrive.

128. The Lake Eve Resort summoned the Orange County Sheriff's Office to assist in executing the plan.

129. A posse of sheriff's deputies arrived.

130. On information and belief, the Lake Eve Resort explained to the deputies the plan to evict a large African-American family.

131. The deputies and the Lake Eve Resort employees executed the eviction as planned.

132. They went room-by-room, knocked on doors, and ordered Plaintiffs to pack their belongings, vacate their rooms, and leave the resort.

133. Plaintiffs were not handcuffed, but the deputies made clear that Plaintiffs had no choice but to comply—or risk being arrested.

134. Indeed Plaintiffs believed they had no option but to submit to the deputies' commands.

135. Plaintiffs did not consent to this deprivation of their freedom of movement.

136. On the way to the rooms, the deputies and employees stopped every African-American they saw in the hallways, elevator, and lobby and asked whether they were part of Plaintiffs' group.

137. As planned, the reservations of those family members who had not yet arrived at the resort were cancelled.

138. Plaintiffs—at a loss to understand why they were being kicked out—asked for an explanation; the resort and the deputies refused to give one.

139. Nevertheless, Plaintiffs politely obeyed the orders.

140. Although Plaintiffs were quiet and cooperative throughout their brief stay at the resort, other guests were not.

141. In particular, a large group of Caucasian high school volleyball players and their parents—all of whom were also guests at the resort—were loud, boisterous, and disruptive. Yet they were not evicted, let alone reprimanded or asked to quiet down.

142. After Plaintiffs gathered their belongings and vacated their rooms, they convened in the lobby to figure out where to go from there.

143. They spent the next four hours trying to find another hotel that could accommodate the family for the rest of the trip. Babies were crying. Young children were hungry and restless. Elderly and pregnant women were exhausted.

144. Meanwhile, a crowd had gathered, wondering why this African-American family had been evicted from the resort and was now surrounded by a posse of sheriff's deputies.

145. Plaintiffs were horrified and humiliated as other guests looked at them as if they were criminals.

146.    Plaintiffs finally found a place to stay—a hotel that was a far cry from the high-end resort they had planned to stay at (indeed had reservations to stay at) for the duration of the trip.

147.    As a result of the eviction, Plaintiffs incurred numerous expenses, including cab rides, rental cars, and food that was lost during the eviction.

148.    In addition, Lake Eve Resort did not refund the unused portion of Plaintiffs' reservation until several days after the eviction.  As a result, those plaintiffs who paid their reservation in advance did not have access to money for several days, requiring them to borrow money from others and, in some cases, to forego planned excursions, including to SeaWorld.

149.    Shortly after Plaintiffs returned home from the trip, they filed complaints with the Florida Commission on Human Relations, the agency charged with enforcing the Florida Civil Rights Act of 1992, which prohibits race discrimination in places of public accommodation.

150.    The Commission conducted an investigation into the incident, including interviewing the family members and the hotel owners, directors, officers, and employees.

151.    During the investigation, Defendants fabricated evidence and lied to the Commission.

152.    Defendants submitted a document that purported to show the Lake Eve Resort's policy—allegedly in existence at the time of the eviction—explaining how to handle "difficult or uncontrollable hotel guests."  The Commission uncovered the fact that no such policy existed at the time of the eviction.

153.   Defendants told the Commission that Plaintiffs were disruptive to other guests at the Lake Eve Resort, leading those guests to complain.   In fact, as the Commission uncovered, no complaints had been made against the family.

154.   Defendants alleged that several of the family members were "irritable, belligerent, confrontational, and disruptive."  The Commission found no evidence of this.

155.   In fact, Defendants had no reason to believe Plaintiffs were disruptive or unruly or anything other than peaceful and respectful of all guests and employees of the Lake Eve Resort.

156.   An administrative hearing was held, and the Administrative Law Judge subsequently issued proposed findings of fact and conclusions of law.  The Administrative Law Judge concluded that Plaintiffs had been evicted from the resort on the basis of their race in violation of the Florida Civil Rights Act of 1992.

157.   The Commission adopted the findings of fact and conclusions of law in its final order, dated November 7, 2014.  The 30-day deadline to appeal the final order has expired.

158.   As a result of Defendants' intentional discrimination, Plaintiffs have suffered and continue to suffer great distress, shame, humiliation, ridicule, insult, embarrassment, confusion, anger, fright, and betrayal.

159.   The entire experience evoked for Plaintiffs the haunting memories of unequal treatment many African-Americans—including Plaintiffs' parents and grandparents—fought so hard to eradicate.

160.   Defendants' actions were intentional, malicious, willful, wanton, and callous.

161.   Defendants showed reckless disregard for Plaintiffs' civil and constitutional rights.

## FIRST CLAIM FOR RELIEF
### (Discrimination under 42 U.S.C. § 1981)

162. Plaintiffs repeat and reallege paragraphs 18, 20 through 81, 83 through 99, and 105 through 161, as they relate to jurisdiction, venue, Plaintiffs, the Lake Eve Defendants, and the facts, respectively, as though fully set forth herein.

163. On June 22, 2011, Plaintiffs were evicted from the Lake Eve Resort by and through the officers, agents, and employees of the Lake Eve Defendants, who were acting within their scope of employment.

164. The discriminatory practices described above were carried out at the direction of and with the consent, encouragement, knowledge, and ratification of the Lake Eve Defendants, under the Lake Eve Defendants' authority, control, and supervision.

165. The Lake Eve Defendants are liable for the unlawful acts of their employees, agents, and representatives directly and under the doctrine of respondeat superior.

166. The Lake Eve Defendants engaged in intentional discrimination based on Plaintiffs' race and caused Plaintiffs to suffer deprivation of their right to make and enforce contracts.

167. The Lake Eve Defendants' actions violated 42 U.S.C. § 1981.

168. As a direct, proximate, and foreseeable cause of said wrongful acts, Plaintiffs suffered and will continue to suffer humiliation, shame, despair, embarrassment, depression, mental pain, anguish, injury to their reputations, and economic losses.

## SECOND CLAIM FOR RELIEF
### (Conspiracy to Discriminate under 42 U.S.C. § 1985)

169.    Plaintiffs repeat and reallege paragraphs 18, 20 through 81, and 83 through 161, as they relate to jurisdiction, venue, Plaintiffs, the Lake Eve Defendants, Sheriff's Deputies, and the facts, respectively, as though fully set forth herein.

170.    The Lake Eve Defendants, by and through their officers, agents and employees, who were acting within the scope of their employment, and the Sheriff's Deputies Defendants, state actors, acted in a willful manner, culminating in an agreement, understanding, or meeting of the minds, to violate Plaintiffs' right to equal protection of the laws.

171.    The Lake Eve Defendants and the Sheriff's Deputies Defendants acted in furtherance of the conspiracy by evicting Plaintiffs from the Lake Eve Resort on June 22, 2011, in the manner detailed above.

172.    The conspiracy was motivated by animus against African-Americans.

173.    The conspiracy is unlawful under 42 U.S.C. § 1985.

174.    As a direct, proximate, and foreseeable cause of said wrongful acts, Plaintiffs suffered and will continue to suffer humiliation, shame, despair, embarrassment, depression, mental pain, anguish, injury to their reputations, and economic losses.

## THIRD CLAIM FOR RELIEF
### (Breach of Contract)

175.    Plaintiffs repeat and reallege paragraphs 18 through 81, 83 through 99, and 105 through 161, as they relate to jurisdiction, supplemental jurisdiction, venue, Plaintiffs, the Lake Eve Defendants, and the facts, respectively, as though fully set forth herein.

176.　At the time of the eviction, Plaintiffs had valid, enforceable contracts with the Lake

　　　Eve Resort, and the Lake Eve Resort had no valid defenses to said contracts.

177.　The Lake Eve Defendants, by and through their officers, agents and employees, who

　　　were acting within the scope of their employment, evicted Plaintiffs and cancelled

　　　their reservations contrary to the terms of the contracts, thereby materially breaching

　　　said contracts.

178.　As a direct, proximate, and foreseeable cause of said wrongful acts, Plaintiffs suffered

　　　economic losses.

### FOURTH CLAIM FOR RELIEF
**(Violation of 42 U.S.C. § 1983 and the Fourth
and Fourteenth Amendments to the U.S. Constitution)**

179.　Plaintiffs repeat and reallege paragraphs 18, 20 through 81, and 100 through 161, as

　　　they relate to jurisdiction, venue, Plaintiffs, Sheriff's Deputies, and the facts,

　　　respectively, as though fully set forth herein.

180.　At all relevant times, the Sheriff's Deputies were persons under 42 U.S.C. § 1983 and

　　　were acting under color of law.

181.　The Sheriff's Deputies engaged in deliberate and intentional discrimination against

　　　Plaintiffs based on their race thereby causing Plaintiffs to be deprived of their right to

　　　equal protection under the Fourteenth Amendment to the U.S. Constitution.

182.　The Sheriff's Deputies denied Plaintiffs access to their hotel rooms and deprived

　　　them of their freedom of movement and detained them—all against their will, in

　　　violation of their right to be free from unreasonable seizures under the Fourth

　　　Amendment to the U.S. Constitution.

183. Any reasonable deputy under the same or similar circumstances would have known that the actions of the Sheriff's Deputies violated Plaintiffs' constitutional rights.

184. Said constitutional rights were clearly established at the time of the eviction.

185. As a direct, proximate, and foreseeable cause of said wrongful acts, Plaintiffs suffered and will continue to suffer humiliation, shame, despair, embarrassment, depression, mental pain, anguish, injury to their reputations, and economic losses.

### FIFTH CLAIM FOR RELIEF
**(Custom, Policy, or Practice Causing Constitutional
Violations under 42 U.S.C. § 1983)**

186. Plaintiffs repeat and reallege paragraphs 18, 20 through 81, and 100 through 161, as they relate to jurisdiction, venue, Plaintiffs, Sheriff's Deputies, and the facts, respectively, as though fully set forth herein.

187. The Orange County Sheriff's Office and Sheriff Jerry L. Demings, out of deliberate indifference and/or unofficial custom and policy, failed to adequately train or supervise their deputies as to the discrimination laws and what constitutes unlawful discriminatory conduct.

188. The Orange County Sheriff's Office and Sheriff Jerry L. Demings should have known, trained, and instructed their deputies to be aware that eviction from a place of public accommodation on the basis of race is unlawful under federal law.

189. Further, the Orange County Sheriff's Office and Sheriff Jerry L. Demings promulgated and maintained a de facto unconstitutional custom, policy, or practice of permitting, ignoring, condoning, and/or encouraging deputies to engage in intentional racial discrimination.

190.   These customs, policies, and practices were the direct and proximate cause of the constitutional violations visited upon Plaintiffs, including their being detained and deprived of their freedom of movement without probable cause and evicted from the Lake Eve Resort on the basis of race.

191.   These customs, policies, and practices and their implementation constitute deliberate indifference to and reckless and callous disregard for the constitutional rights of Plaintiffs.

192.   As a direct, proximate, and foreseeable cause of said wrongful acts, Plaintiffs suffered and will continue to suffer humiliation, shame, despair, embarrassment, depression, mental pain, anguish, injury to their reputations, and economic losses.

## SIXTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)

193.   Plaintiffs repeat and reallege paragraphs 18 through 81, 83 through 99, and 105 through 161, as they relate to jurisdiction, supplemental jurisdiction, venue, Plaintiffs, the Lake Eve Defendants, and the facts, respectively, as though fully set forth herein.

194.   The Lake Eve Defendants, by and through their officers, agents and employees, who were acting within the scope of their employment, and the Sheriff's Deputies, acted intentional and/or recklessly when they evicted Plaintiffs from the Lake Eve Resort and cancelling their reservations. Defendants' conduct was extreme and outrageous.

195.   Plaintiffs did not engage in any behavior that could justify Defendants' decision to have them removed from the Lake Eve Resort.

196.   Defendants' extreme and outrageous conduct caused Plaintiffs severe emotional distress and anxiety.

28

197.   As a direct, proximate, and foreseeable cause of said wrongful acts, Plaintiffs suffered and will continue to suffer humiliation, shame, despair, embarrassment, depression, mental pain, anguish, injury to their reputations, and economic losses.

## SEVENTH CLAIM FOR RELIEF
### (Negligence)

198.   Plaintiffs repeat and reallege paragraphs 18 through 81, 83 through 99, and 105 through 161, as they relate to jurisdiction, supplemental jurisdiction, venue, Plaintiffs, the Lake Eve Defendants, and the facts, respectively, as though fully set forth herein.

199.   The Lake Eve Defendants, through the actions of its owners, directors, officers, employees, agents and/or representatives, owed Plaintiffs a duty as a place of public accommodation and innkeeper.

200.   Defendants Vinod Kalidas, Nirmaksee Kalidas, Arti Kalidas, and Lisa Catena, breached said duty by negligently supervising and directing the Lake Eve Resort employees relative to the unjustified and unreasonable eviction of Plaintiffs.

201.   As a direct, proximate, and foreseeable cause of said negligence, Plaintiffs suffered and will continue to suffer humiliation, shame, despair, embarrassment, depression, mental pain, anguish, injury to their reputations, and economic losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

a.   Declare that the actions of Defendants described above constituted discrimination on the basis of race in violation of 42 U.S.C. §§ 1981, 1983, 1985, the Fourth and Fourteenth Amendments to the U.S. Constitution;

b.  Award Plaintiffs compensatory damages in an amount to be determined at trial to fully compensate them for their damages, including mental pain, loss of dignity, inconvenience, humiliation, shame, despair, embarrassment, depression, anguish, injury to their reputations, distress, and financial injury;

c.  Award punitive damages in an amount that will serve to adequately punish and deter the conduct alleged herein;

d.  Award costs of suit and reasonable attorney fees pursuant to 42 U.S.C. § 1988;

e.  Award all such other relief the Court deems appropriate.


Dated: June 16, 2015

Troy A. Rafferty (Fla. Bar No. 24120)
William F. Cash III (Fla. Bar No. 68443)
    *Trial Counsel*
Aaron L. Watson (Fla. Bar No. 71091)
**LEVIN, PAPANTONIO, THOMAS, MITCHELL,**
**RAFFERTY & PROCTOR, P.A.**
316 South Baylen Street, Suite 600
Pensacola, Florida 32502
Telephone:    (850) 435-7059
Fax:          (850) 435-7020
E-mail:       trafferty@levinlaw.com
              bcash@levinlaw.com
              awatson@levinlaw.com

Nicholas DiCello (*motion for special admission forthcoming*)
Jeremy Tor (*motion for special admission forthcoming*)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, Ohio 44114
Telephone:     (216) 696-3232
Fax:     (216) 696-3924
E-mail:     ndicello@spanglaw.com
     jtor@spanglaw.com

*Counsel for Plaintiffs*